IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DORA L. ADKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15cv879(JCC/MSN) |
| ) | |
| EMILY ROSS, et al. ) | |
| ) | |
| Defendants. ) | |

# M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss [Dkt. 28] and Plaintiff's request for leave to amend [Dkt.32] For the following reasons, the Court grants Defendants' motion to dismiss and denies Plaintiff's request for leave to file a third amended complaint.

## I. Background

At the motion to dismiss stage, the Court must read the complaint as a whole, construe the complaint in a light most favorable to the plaintiff, and accept the facts alleged in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Dora L. Adkins ("Plaintiff") filed this action against Defendants Sergeant Emily Ross, Officer J.U. Aguilar, and Officer K. Jochem ("Defendants"), "for a violation of Plaintiff's [rights under the] Fourth Amendment of the United States Constitution and for a Claim of Intentional Infliction of

1

Emotional Distress." (Second Amended Complaint ("SAC") [Dkt. 24] at 1.) Plaintiff seeks $1,000,000 in compensatory damages for the Intentional Infliction of Emotional Distress ("IIED") claim, and $350,000 in punitive damages. (*Id.* at Addendum ¶ 1.)

In the early morning hours of June 23, 2015, three George Mason University ("GMU") police officers, Sergeant Ross, Officer Aguilar, and Officer Jochem, found Plaintiff "resting and/or sleeping" on top of a table inside a GMU classroom. (SAC ¶ 3.) The officers asked Plaintiff for identification and escorted her to her car, which was parked outside with two parking citations. (*Id.* at ¶¶ 4-7.) After providing her Virginia driver's license, Sergeant Ross asked Plaintiff if they could search her vehicle "for stolen property taken and/or missing property from George Mason University. The Plaintiff stated 'Yes' after she was informed by Sergeant Ross that she was "in the video' made with stolen property from George Mason University." (*Id.* at ¶ 9.) While the search of her vehicle was underway, Sergeant Ross and Officer Aguilar asked Plaintiff a series of questions about her identity, why she was at the University at that late hour, and whether she had a safe place to spend the night. (*Id.* at ¶¶ 10-17.) After searching her vehicle, Defendants provided Plaintiff with a "Trespass Warning/Notice" and explained that Plaintiff was prohibited from

2

entering all GMU campuses, facilities and grounds for a period of one year. (*Id.* at ¶ 18.)

Plaintiff now claims that the search of her vehicle was illegal because she provided consent "based upon false trickery accusations of theft of George Mason University's property which included having me in a video taking the stolen property while wearing a 'pink hat.'" (SAC ¶ 20.) Plaintiff also claims that these events have caused her severe emotional distress. (*Id.* at ¶¶ 21-26.) Defendants move to dismiss the complaint in its entirety, arguing that they are entitled to qualified immunity on Plaintiff's constitutional claims, that they are entitled to immunity as employees of a state agency on Plaintiff's IIED claim, and that the conduct alleged in the Second Amended Complaint does not meet the criteria required for a valid IIED claim in any event. (Defs.' Mot. [Dkt. 28]; Defs.' Mem. in Supp. [Dkt. 29].) Plaintiff responded to the motion to dismiss, filing an "Opposition to Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss" [Dkt. 33], and a "Reply to Defendant's Motion to Dismiss" [Dkt. 32], in which Plaintiff requested leave to file a third amended complaint. Defendants' Motion to Dismiss and

Plaintiff's request for leave to file a third amended complaint are now before the Court.[1]

## II. Legal Standard

Defendants move to dismiss under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim. "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter jurisdiction over the pending action. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. As relevant here, the assertion of immunity is properly addressed by the Court on a motion filed pursuant to Rule 12(b)(1). *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir.

---

[1] Oral argument on Defendants' Motion to Dismiss was scheduled for November 5, 2015 after it had been properly noticed for that date by Defendants when they filed their motion. [Dkt. 30] Ms. Adkins received that notice and the accompanying *Roseboro* Notice, and then confirmed her knowledge of the hearing date by filing her own notice of hearing on the Motion to Dismiss confirming November 5, 2015 at 10:00 a.m. as the scheduled date and time. [Dkt. 34] Despite having notice and knowledge of the date and time of the hearing, Plaintiff failed to appear in Court at 10:00 a.m. on November 5, 2015.

2001) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)). In this instance, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995). The burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219. "Federal courts are courts of limited jurisdiction, and we presume that a cause lies outside this limited jurisdiction. The burden of establishing the contrary rests upon the party asserting jurisdiction." *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 583-84 (4th Cir. 2012) (citation omitted).

Defendants also challenge the sufficiency of the complaint under Rule 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted). While the court must accept well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions disguised as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009).

5

Therefore, a pleading that offers only a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. In the instance where sufficient facts are alleged in the complaint to rule on an affirmative defense, such as the statute of limitations, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (emphasis in original); *see also* 5B Wright & Miller, Federal Practice & Procedure § 1357.

### III. Analysis

#### A. 42 U.S.C. § 1983

Ms. Adkins brings her claim for "Fourth Amendment Violations" under 42 U.S.C. § 1983, which "permits suit by a citizen who has been deprived of a right secured by the Constitution by a person acting under color of state law." *Bonner v. Anderson*, 81 F.3d 472, 474 (4th Cir. 1996). Defendants respond by asserting that Plaintiff has failed to allege a constitutional violation and that they are entitled to qualified immunity on Plaintiff's §1983 claim even if the Court

determines a constitutional violation has occurred. (Defs.' Mem. at 5, 10.) Because determining whether a constitutional violation has occurred is itself one of the steps of the two step qualified immunity analysis, the Court begins with that inquiry. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009) ("[D]istrict courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.") Ultimately, the Court finds that Defendants conduct did not violate Plaintiff's Fourth Amendment rights because Plaintiff voluntarily consented to the search of her car.

Generally, the Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are per se unreasonable unless a valid exception to the warrant requirement is applicable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Voluntary consent to the search is one such valid exception. *U.S. v. Lattimore* 87 F. 3d 647 (4th Cir. 1996). In assessing the voluntariness, and thus the validity of consent to search, "the totality of the circumstances surrounding the consent must be examined." *Id.* at 650. Plaintiff argues that her consent to the search was invalid as it was "based upon false trickery accusations of theft of George Mason University's property which included having [Plaintiff] in a video taking the stolen property while wearing a 'pink hat.'" (SAC ¶ 20.)

7

Specifically, Plaintiff alleges that she consented to a search of her vehicle only "after she was informed by Sergeant Ross that she was 'in the video' made with stolen property from George Mason University.'" (*Id.* at ¶ 11.) Courts have repeatedly held that misrepresentations of law by law enforcement officers asserting a legal right to conduct the search are sufficient to invalidate any consent to the search which might subsequently be given. *See Lattimore*, 87 F.3d at 652 (assertion by trooper that he would call a drug sniffing dog despite lacking the requisite cause to do so would "raise serious questions concerning the voluntariness of [] consent."); *Bumper v. North Carolina*, 391 U.S. 543, 549-50 (1986)(holding that consent was invalid when officers falsely notified the occupant of a home that they possessed a search warrant); *Amos v. United States*, 255 U.S. 313, 315, 317 (1921)(holding that a wife's consent was not voluntary when agents told her they had come to search the premises); *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 500 (9th Cir. 1994)("It is well established that there can be no effective consent to a search or seizure if that consent follows a law enforcement officer's assertion of an independent right to engage in such conduct.").

However, where the officer's statements were not a claim of legal authority to conduct the search regardless of consent, courts have been reluctant to invalidate consent. *See*

8

*United States v. Garcia*, 890 F.2d 355, 361 (11th Cir. 1989)(holding that the consent was voluntary when agents never represented that they possessed a search warrant or that they could lawfully search without Defendant's consent). The alleged misrepresentation here was not a claim of lawful authority or a misrepresentation of the suspect's rights, but rather a simple allegation that Ms. Adkins was on video with some stolen property. As Defendants point out in their Memorandum in Support, Officer Ross may simply have made a mistake as to Ms. Adkin's identity or have simply suspected that Ms. Adkins was the person in the video based on physical similarity. (Defs.' Mem. at 8.) Sergeant Ross did not make the kind of misleading statement of law which would invalidate consent by simply informing Ms. Adkins why she wanted to search Ms. Adkins's car. Holding that this interaction violated the Fourth Amendment would hamstring police investigations and further chill the communication between officer and suspect.

Further, it is clear from the facts in the complaint that Adkins, like the defendant in *Lattimore*, was not a "newcomer to the law." *Lattimore*, 87 F.3d at 651. Plaintiff's car was full of "court documents" relating to lawsuits she has filed as a Plaintiff. (SAC ¶ 16.) While Ms. Adkins may not possess the familiarity with the law that a member of the bar or a police officer might, the facts alleged demonstrate that she

9

was not totally naïve as to her rights under the Fourth Amendment. The fact that Ms. Adkins was comfortable enough to joke about a "pink cat" and laugh with Officer Ross further suggests that she was aware of her right to refuse the search and was not coerced into giving her consent. (*Id.* at ¶ 10.) For the above reasons, the Court determines that Ms. Adkins consent to the search of her of car was voluntary, and the search was therefore reasonable. Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's claims for violations of the Fourth Amendment.

### B. Intentional Infliction of Emotional Distress

Plaintiff also asserts a claim against Sergeant Ross and Officers Aguilar and Jochem for IIED. Defendants argue that they are immunized from state law tort claims as employees of an agency of the Commonwealth for whom sovereign immunity has not been waived, and that in any event, Plaintiff fails to adequately allege facts which would support a claim for IIED. While IIED is an intentional tort and Defendants are therefore not protected from IIED claims under sovereign immunity, they are correct that the facts alleged cannot support a claim for IIED. The Court therefore dismisses Plaintiff's claim for IIED as well.

The Court rejects Defendants' argument that sovereign immunity protects them from liability for the alleged

intentional tort of IIED. The application of sovereign immunity in Virginia to common law civil suits against officers is somewhat complicated. In Virginia, a government agent performing discretionary functions is protected from liability for ordinary negligence, but may be liable for acts of gross negligence. *See Colby v. Boyden*, 241 Va. 125, 128 (Va. 1991) ("[T]he degree of negligence which must be shown to impose liability is elevated from simple to gross negligence."). Some courts have applied this gross-negligence standard even in the context of intentional torts, such as assault and battery. *See, e.g.*, *Ware v. James City County, Va.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009) (applying immunity to intentional tort claims); *Veney v. Ojeda*, 321 F. Supp. 2d 733, 747 (E.D. Va. 2004) (considering, but not finding, immunity for assault and battery).

This Court believes it is more consistent with Virginia law to hold that sovereign immunity does not apply in the context of these intentional torts. In *Elder v. Holland*, the Virginia Supreme Court stated that "we must conclude that a State employee may be held liable for intentional torts." 155 S.E.2d 369, 372 (Va. 1967). Furthermore, when discussing the loss of immunity through gross negligence, the Fourth Circuit has stated that an officer "obviously could not avail himself of the defense [of sovereign immunity] had he intended to commit an

11

assault and battery." *McLenagan v. Karnes*, 27 F.3d 1002, 1008 n.10 (4th Cir. 1994). Many federal district courts interpreting Virginia law have declined to apply sovereign immunity to intentional torts. *See, e.g.*, *Hales v. City of Newport News*, No. 4:11cv28, 2011 WL 4621182, at *5-8 (E.D. Va. Sept. 30, 2011) (considering sovereign immunity for negligence claim, but not for intentional torts); *William Cty. Police Dept.*, 640 F. Supp. 2d 688, 712 (E.D. Va. 2009) ("Sovereign immunity, however, does not extend to state employees who commit intentional torts. Thus, the state law claims for the intentional tort of assault and battery . . . cannot be dismissed on sovereign immunity grounds." (internal citations omitted)); *Cominelli v. The Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 716 (W.D. Va. 2008) ("[S]tate employees are not immune for wanton or grossly negligent behavior, intentional torts, or actions taken outside the scope of their employment."). As IIED is an intentional tort, and therefore lies outside the protection of sovereign immunity, the Court turns to the merits of Plaintiff's IIED claim.

While Defendants are not entitled to immunity, Plaintiff still fails to allege facts which would satisfy the requirements of an intentional infliction of emotional distress claim. A plaintiff bringing a claim for IIED must plausibly allege facts that show "(1) the wrongdoer's conduct was

12

intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Hatfill v. New York Times Co.*, 532 F.3d 312, 325-26 (4th Cir. 2008). "In order to satisfy the second element, the alleged improper conduct must be 'so outrageous in character, and so extreme in degree, as to be regarded as atrocious and utterly intolerable in a civilized community.'" *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 Fed App'x. 504, 507 (4th Cir. 2010) (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)). The interaction described by Ms. Adkins in the Complaint contains nothing approaching "outrageous" or "intolerable" behavior by Defendants. Defendants found Ms. Adkins asleep in a classroom late in the night. (SAC ¶ 3.) As discussed above, the search of Ms. Adkin's car was conducted only after receiving her voluntary consent, and was thus not illegal. Rather than arresting Ms. Adkins for trespassing when they found her asleep in a classroom after hours, Defendants allowed Ms. Adkins to gather her belongings before escorting her to her car. (SAC ¶¶ 6, 7.) At every stage of their interaction, Defendants attempted to help Ms. Adkins, first by asking if she had any relatives in the area and then by attempting to find Ms. Adkins a place where she could spend the night. (*Id.* at ¶¶ 8, 14.) Defendants suggested

13

that Ms. Adkins would be allowed to spend the night in her car if she went to the parking lot at Wal-Mart and offered to help Ms. Adkins find shelter for the night with "any available resources." (*Id.* at ¶ 14.) Far from engaging in "outrageous" or "intolerable" conduct, Ross, Aguilar, and Jochem appear to have conducted themselves as compassionate and professional Police Officers. Ms. Adkins may well have been frightened or distrustful of the police as a result of stories in the news or her own personal views and experiences, but a plaintiff's personal dislike of the police does not transform an act of good police work into an action "utterly intolerable in a civilized society". *Russo*, 400 S.E.2d at 162. Because the conduct alleged in the complaint could not plausibly meet the objective standard of outrageousness needed to satisfy the second element of an IIED claim, the Court dismisses Plaintiff's claim for IIED.

        C. Request for Leave to File Third Amended Complaint

As a final matter, the court notes that Plaintiff, in her "Reply to Defendants' Motion to Dismiss", requests that the Court grant leave to file a third amended complaint. Plaintiff has already amended her complaint twice, and the Court specified in its previous opinion on this matter that no further amendments to the complaint would be allowed. [Dkt. 26]. Plaintiff has already amended her complaint several times, and

14

she can only amend it again with "leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). As Plaintiff was previously told that no further amendments would be allowed in this case and it does not appear that Plaintiff could resolve any of the deficiencies in the Second Amended Complaint through further amendment, the Court denies her request to file a third amended complaint.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses the second amended complaint with prejudice. The Court also denies Plaintiff's request for leave to file a third amended complaint.

An appropriate Order shall issue.

                                                    /s/

November 10, 2015               James C. Cacheris
Alexandria, Virginia       UNITED STATES DISTRICT COURT JUDGE